344 So.2d 67 (1977)
Claude KNIGHT, Jr.
v.
SOUTHEASTERN CHEMICAL CORP. et al.
No. 8148.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 1977.
Daniel E. Becnel, Jr., Reserve, for plaintiff-appellee.
Taylor, Porter, Brooks & Phillips, William A. Norfolk, Baton Rouge, for defendant-appellant.
Before LEMMON, GULOTTA and MORIAL, JJ.
MORIAL, Judge.
Defendant appeals from a judgment awarding plaintiff workmen's compensation benefits for total and permanent disability resulting from a traumatic neurosis condition. We affirm.
Plaintiff was injured in the course and scope of his employment with defendant on June 23, 1975. While attempting to clean a chemical vat he slipped and struck his neck *68 and back on a horizontal bar. Plaintiff alleged that the resulting injury permanently disabled him from engaging in work of a reasonable character without substantial pain. Defendant denied that the injury was work related and contested plaintiff's disability.
Plaintiff was taken to defendant's doctor, Dr. Robert Albrecht, immediately after the accident. Dr. Albrecht prescribed diathermy treatments and muscle relaxants. He told plaintiff he could return immediately to the job.
Plaintiff saw Dr. John Schumacher, a neurological surgeon the next day. He found that plaintiff had a moderate cervical and lumbar strain. By late July, Dr. Schumacher found that plaintiff's back was improving, but plaintiff continued to complain of back pain as well as headaches, dizziness, eye and throat irritation and constant bowel problems. The doctor opined that plaintiff's complaints were psychosomatic in nature but felt that he was not qualified to determine if the anxiety syndrome was real or fabricated. He thought such a determination should be made by a psychiatrist.
Dr. F. J. Padua, a general practitioner saw plaintiff approximately seventy-two times after an initial visit on June 25, 1975. Dr. Padua originally treated plaintiff for his neck and back injuries but testified that all objective symptoms had subsided by December 1975. However, he continued to treat plaintiff because he thought Knight was emotionally unstable and possibly suicidal. He did not believe that plaintiff was a malingerer but that he had suffered a traumatic neurosis after the accident which manifested itself by multiple physical complaints. The doctor testified that his file was filled with numerous papers on which plaintiff kept a daily record of his complaints and bowel patterns. He testified that plaintiff's fixation with his bowel habits was not uncommon for a person who needs psychiatric treatment. He felt plaintiff was in need of such treatment.
Dr. Joshua Carey, a neurologist, saw plaintiff four times between September 1975 and January 1976. He also treated plaintiff for his neck and back problem. He could make no objective findings after December 1975. However, during the treatment period he noted plaintiff's extreme depression and testified plaintiff shook all over. He believed plaintiff's complaints were genuine and that he had an emotional problem necessitating psychiatric treatment. He felt plaintiff was physically capable of working, but unable to do so because of his depression and emotional problems. Dr. Dirk Ory, a general practitioner and surgeon saw plaintiff some twenty times between September and November 1975. He stated that plaintiff's complaints increased as the treatment continued and that he became increasingly depressed. He thought plaintiff was displaying psychiatric symptoms and was in need of psychiatric care. He felt plaintiff's complaints were legitimate and that he was not a malingerer.
Dr. Charles Smith, a psychiatrist saw plaintiff twice on February 16 and March 1, 1976. He felt that plaintiff had an abnormal psychological condition which pre-existed his accident. However, he was of the opinion that the accidental injury was a stressful event in plaintiff's life which lead to a personality regression and anxiety syndrome manifested by somatic preoccupation. Dr. Smith did not feel that plaintiff was able to return to work or that his condition would improve without further psychiatric treatment.
Dr. Kenneth Ritter, a psychiatrist saw plaintiff at defendant's request on March 12 and April 2, 1976. He did not feel that plaintiff manifested the mental components of anxiety. He diagnosed plaintiff's problem as a compensation syndrome which would only be cured by a monetary award or psychiatric intervention.
Plaintiff testified that he had not previously suffered from any of the physical problems that developed after the June 23, 1975 accident. He testified he had not been treated for any mental problems. He was questioned extensively by defense counsel about his past work history. He admitted *69 to being out of work for a period of months at certain intervals between fall 1969 and March 1974. However, he stated that during that period he had made numerous unsuccessful job applications. He was also in the Army from June 1970 until January 1972. He admitted to dropping out of Southern University in 1969 because a campus demonstration had upset him. The defense counsel placed special significance on plaintiff's comment that his mind went blank and he began to meditate on his future after that event.
The only other lay testimony was that of plaintiff's foreman and manager at Southeastern. They testified that plaintiff had received two promotions in the ten months he was with the company, but that his work as an operator had not been satisfactory and that he had been told that if his work did not improve he would be discharged.
Defendant argues that plaintiff failed to prove that he was totally and permanently disabled by a preponderance of the evidence. Defendant argues that none of the medical doctors could diagnose the cause of plaintiff's complaints and that the testimony of one psychiatrist, Dr. Smith, alone was insufficient evidence. Defendant contends that the trial judge erred in failing to take into account Dr. Ritter's testimony. Defendant also argues that plaintiff failed to prove that his mental disability was causally connected to the accident and that he did not have a pre-existing mental condition. Defendant also contends that the fact that plaintiff was frequently out of work indicates that he is a malingerer.
When a claimant seeks workmen's compensation for traumatic neurosis, such condition must be proven, as in any other disabling injury, by a preponderance of the evidence. Such condition must not only be shown to exist, but also that it was causally connected to the work related accident. Andrus v. Rimmer & Garrett, Inc., 316 So.2d 433 (La.App. 3 Cir. 1975).
We conclude that the trial judge was correct in finding that plaintiff proved his case by a preponderance of the evidence. We do not find any error on the part of the trial judge in according greater weight to the testimony of plaintiff's four treating physicians and Dr. Smith than he did to that of Dr. Ritter. The evidence clearly supports a conclusion that plaintiff developed an anxiety syndrome as a result of his work-related injury. Guillory v. Travelers Insurance Company, 326 So.2d 914 (La.App. 3 Cir. 1976). Morris v. Argonaut Insurance Co., 261 So.2d 344 (La.App. 1 Cir. 1972). We find no evidence that plaintiff displayed any abnormal mental condition prior to the accident. Plaintiff held several jobs, served in the Army for two years and was honorably discharged, and had worked for ten months for defendant company. During the ten month period he received two promotions. We also cannot give any weight to defendant's argument that it was abnormal for plaintiff to meditate on his future after leaving school. Nor can be accept defendant's contention that plaintiff is a malingerer.
While it is true that where a plaintiff is claiming compensation on the basis of traumatic neurosis, we must carefully scrutinize the record for unjustified claims, we must also guard against the danger of denying recovery to a deserving plaintiff. Muse v. Sentry Insurance Co., 269 So.2d 609 (La.App. 3 Cir. 1972). Awards for mental afflictions are permitted where the record discloses plaintiff to be honest, sincere and truthful. Smith v. Willey Wood Construction Company, 247 So.2d 904 (La.App. 4 Cir. 1971). We find nothing in this record to cause us to doubt plaintiff's veracity. Plaintiff consistently made the same complaints to all the doctors who treated and evaluated him. Except for Dr. Ritter, who saw plaintiff twice, all of the doctors were of the opinion that plaintiff's complaints were genuine and caused by his emotional problems. As Dr. Padua testified, the multiplicity and repetition of plaintiff's subjective complaints supported an objective finding of a mental problem. We also give great weight to the findings of the trial judge with regard to the credibility of plaintiff. Canter v. Koehring, La., 283 So.2d 716 (1973).
*70 For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.